IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| VERNELL WILSON, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 2:26-cv-11839 |
| | ) | |
| vs. | ) | |
| | ) | HON. |
| MACKINAW ADMINISTRATORS, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## COMPLAINT

*Plaintiff, Vernell Wilson, by and through her attorneys, asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

Plaintiff, Vernell Wilson, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against Defendant, Mackinaw Administrators, LLC.

## JURY DEMAND

NOW COMES PLAINTIFF, Vernell Wilson, and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff, Vernell Wilson (hereinafter referred to as "Plaintiff" or "Ms. Wilson"), was a resident of Oakland County in the State of Michigan.

2. Defendant, Mackinaw Administrators, LLC (hereinafter referred to as "Defendant" or "Mackinaw"), is a limited liability company that conducts regular and systemic business in the State of Michigan, with a principal place of business located at 200 N. Grand Ave., Lansing, MI 48933, and is a member of AmeriTrust Group, a subsidiary of Emergent

1

Holdings, Inc., whose parent company is Blue Cross Blue Shield.

3.     Defendant employs more than 500 employees.

4.     This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.

5.     Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission, Charge No. 471-2026-02027, and has received a Notice of Right to Sue. Plaintiff files this Complaint within 90 days of receipt of the Notice of Right to Sue.

6.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**VENUE**

7.     Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

8.     Plaintiff Vernell Wilson is an African American woman who began her employment with Defendant on June 10, 2024, as a Senior Claim Representative, earning an annual salary of $72,500.00.

9.     Plaintiff brought to this position approximately 28 years of claims-handling experience.

10.    Upon her hire, Plaintiff was assigned an inventory of approximately 168 claims previously handled by Michelle Floyd, a Senior Claim Representative who was retiring.

2

Plaintiff was also assigned claims previously belonging to Trisha Friday, another Senior Claim Representative, and was made responsible for Friday's emails and litigated files.

11. Plaintiff's original manager was Chris Fleschig. Shortly after Plaintiff's hire, Fleschig moved to another role, and Nicole Blowers became Plaintiff's Claims Manager. Tracy Mattiello served as the Vice President of Claims, later redesignated Director of Claims.

12. Trisha Friday is the sister of Tracy Mattiello, which Plaintiff did not learn until months after starting her employment.

13. Shortly after beginning her employment, Defendant suffered a company-wide security incident that disrupted Plaintiff's training for several months.

14. On October 16, 2024, during a team meeting, Plaintiff questioned why she had been assigned new claims while she was on vacation. This complaint triggered retaliatory treatment by management.

15. On January 10, 2025, Tracy Mattiello arranged an unannounced home visit to Plaintiff's residence under the pretext of checking on her computer setup. Upon entering Plaintiff's home, Mattiello immediately stated: "You called out Nicole." During that visit, Mattiello instructed Plaintiff that all claim files were to contain an "ECLDAR" notation, and placed Plaintiff on a performance plan designated a "Success Plan, Not a Performance Plan," with a deadline of July 4, 2025.

16. On January 14, 2025, Mattiello introduced the ECLDAR documentation standard at a team meeting for the broader team.

17. Plaintiff completed the Success Plan in approximately May 2025, approximately two months before the deadline.

18. Throughout her employment, Plaintiff was subjected to unequal terms and conditions of

employment compared to her white colleagues.

19.   Trisha Friday, a white Senior Claim Representative and Tracy Mattiello's sister, was not required to complete ECLDARs in every file or to populate all required fields on the MACP tab, yet Plaintiff was cited and disciplined for failing to meet that same standard.

20.   When Defendant evaluated a claims file reviewed during the January 10, 2025 home visit, Tracy Mattiello acknowledged that all required substantive information was present in the file, but scored the file a 65 (below Fully Met) solely because the ECLDAR acronym was not itemized. Trisha Friday received a score of 85 (Fully Met) under the same supervisor. Plaintiff's prior supervisor, Chris Fleschig, had rated Plaintiff as "Fully Met" for 2024.

21.   At a September 10, 2025 team meeting, Mattiello stated that adjusters do not need to spell out ECLDAR as long as the information is present in the claim. Nicole Blowers nonetheless continued to require Plaintiff to include the full ECLDAR notation.

22.   In or around July 2025, Plaintiff discovered that her name had been omitted from the list of adjusters whose Michigan and Kentucky adjuster licenses were to be renewed, despite Plaintiff having previously provided copies of her licenses to both Mattiello and Blowers as requested.

23.   Robert Russell, a white male, was hired as Claim Representative II on May 27, 2025, with an inventory of approximately 87 claims and was given a 90-day "Grace Period" that no other adjuster received. At an August 2025 team meeting, Mattiello announced that Russell was being taken off his Grace Period. Plaintiff was not given any such grace period when she was hired.

24.   During the period of Plaintiff's employment, Nicole Blowers issued racially differential

instructions to Plaintiff regarding the handling of similar claims. On two claims involving comparable red flags and circumstances, Blowers directed Plaintiff to calculate wage loss and pay the white claimant, while directing Plaintiff to schedule an Examination Under Oath (EUO) for the African American claimant. Plaintiff, with her 28 years of claims-handling experience, had never previously encountered such differential treatment.

25. At a subsequent point, notes Blowers had originally placed in the white claimant's file were changed or removed.

26. On March 30, 2025, Plaintiff met with Regina Toney, Defendant's original Human Resources representative, and reported that Nicole Blowers had directed administrative staff Nidian Cane and Katherine Davis to "Sweep a lawsuit under the rug" from the Michigan Assigned Claims Plan file, in the presence of the entire team.

27. Despite Plaintiff having achieved a "Fully Met" performance rating, Plaintiff received only a 1.5% annual pay increase. Natalie Coleman, a Litigation Claims Representative, communicated to team members that employees with a "Fully Met" rating receive a 3% increase. Additionally, Plaintiff's salary as a Senior Claim Representative was less than the salary earned by at least one Claim Representative II.

28. Ophelia Irby, an African American female, was hired on November 25, 2024 as a Claim Representative II on a referral from Plaintiff. Irby was also subjected to differential treatment and heightened scrutiny compared to her white colleagues, and on September 3, 2025, was placed on a formal 30-day PIP. Irby was discharged on October 9, 2025. Amanda Jones, a Claim Representative II, told Irby on or about September 16, 2025: "it just seems like they treat you and Vernell differently."

29. In approximately April 2025, during a Zoom call related to the Success Plan, Mattiello

5

raised her voice at Plaintiff in an intimidating manner, demanding to know whether Plaintiff had placed a doctor's appointment on the calendar that morning, stating "You put this on the calendar this morning - Yes or No, Yes or No?" Plaintiff later confirmed the appointment had been placed on the calendar the prior day.

30. On or about September 22, 2025, Blowers sent an email to team members directing that if they were not "caught up," they were not to attend an upcoming vendor luncheon.

31. On September 23, 2025, Plaintiff attended the Team Rehab vendor luncheon. At that luncheon, it was evident to Plaintiff that Blowers treated Trisha Friday warmly while treating Plaintiff in a hostile manner.

32. On September 24, 2025, Tina Menzie, Defendant's Senior Employee and Labor Relations Specialist, sent an email to Plaintiff stating: "Since you are choosing not to attend the mandatory PIP meetings, you are being suspended immediately for insubordination. This suspension will be unpaid." Within approximately five minutes of that email, Plaintiff was locked out of her work computer.

33. Plaintiff disputes that she refused to attend mandatory PIP meetings. Plaintiff's position is that she disputed being placed on any Informal PIP at all, as she had already completed her prior Success Plan in May 2025, two months before its deadline.

34. On September 26, 2025, Defendant's Senior Employee and Labor Relations Specialist Cindy Maldonado sent Plaintiff a communication directing Plaintiff to "cease and desist from communicating with management."

35. On September 30, 2025, a Zoom meeting was held among Plaintiff, Cindy Maldonado, Danielle Trim (of Emergent Holdings), and Tina Menzie. During that meeting, Maldonado stated she would investigate Plaintiff's claims of unequal treatment.

36. On October 10, 2025, Plaintiff was terminated via a Zoom meeting attended by Tina Menzie, Nicole Blowers, and an unidentified third person whom Menzie identified as "Michael," described as listening in for observation. When Plaintiff asked the reason for her termination, Menzie stated "Insubordination," and indicated the termination was because Plaintiff had not agreed to the Formal PIP. When Plaintiff asked about the outcome of Cindy Maldonado's investigation, Menzie stated: "There was no hostile environment."

37. Defendant reported "Misconduct" as the basis for Plaintiff's separation to the Unemployment Insurance Agency, without prior warning to Plaintiff and without evidence to support that characterization.

38. Plaintiff suffered lost wages, loss of career opportunities, loss of fringe benefits, emotional distress, loss of sleep, headaches, anxiety, and damage to her professional reputation in the insurance industry as a result of Defendant's conduct.

39. Plaintiff requests damages as set forth herein.

## COUNT I
## RACE AND COLOR DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, ET SEQ.

40. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

41. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., prohibits employers from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of such individual's race or color.

42. At all material times, Plaintiff was an employee and Defendant was her employer covered

7

by, and within the meaning of, Title VII.

43.     Plaintiff is an African American woman and, as a result, is a member of a protected class under Title VII.

44.     Plaintiff was qualified for her position as Senior Claim Representative, having brought approximately 28 years of claims-handling experience to the role and having received a "Fully Met" performance rating from her original supervisor.

45.     Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to discriminate against an employee on the basis of race or color, including through differential standards, differential pay, discriminatory performance evaluations, and termination.

46.     By the conduct described above, Defendant intentionally discriminated against Plaintiff on the basis of her race and color, subjecting her to unequal terms, conditions, and privileges of employment as compared to her white colleagues, including but not limited to: disparate documentation standards, disparate performance evaluations, disparate workload assignments, denial of a grace period extended to a white male colleague, racially differential claim-handling instructions, omission of license renewals, an unwarranted performance plan, an unwarranted suspension without pay, and termination.

47.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

48.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

49.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of

career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss of professional reputation.

50.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, ET SEQ.

51.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

52.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., prohibits employers from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of such individual's sex.

53.     At all material times, Plaintiff was an employee and Defendant was her employer covered by, and within the meaning of, Title VII.

54.     Plaintiff is a woman and, as a result, is a member of a protected class under Title VII.

55.     Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to discriminate against an employee on the basis of sex.

56.     By the conduct described above, Defendant treated Plaintiff less favorably than male colleagues with respect to the terms, conditions, and privileges of her employment, including but not limited to the grant of a "Grace Period" and reduced workload to Robert Russell, a male employee, that was not extended to Plaintiff.

57.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

58.     As a direct and proximate result of those actions, the terms, conditions, and privileges of

Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

59.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss of professional reputation.

60.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, ET SEQ.

61.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

62.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., prohibits employers from retaliating against an employee who has opposed any practice made unlawful by Title VII or who has filed a charge, testified, assisted, or participated in any investigation, proceeding, or hearing under Title VII.

63.     At all material times, Plaintiff was an employee and Defendant was her employer covered by, and within the meaning of, Title VII.

64.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

65.     Plaintiff engaged in protected activity by, among other things: questioning the assignment of new claims to her during her vacation in October 2024; reporting to Human Resources on March 30, 2025 that Nicole Blowers had instructed administrative staff to conceal a

10

lawsuit; reporting to upper management, including Bill Brown, the President, Tracy Mattiello, Nicole Blowers, Tina Menzie, and Cindy Maldonado, regarding unequal treatment and retaliation; and filing EEOC Charge No. 471-2026-02027 on January 7, 2026.

66. Defendant, through its agents, had knowledge that Plaintiff engaged in protected activity because she reported the issues directly to multiple agents of Defendant.

67. After Plaintiff engaged in protected activity, Defendant and its agents took adverse employment actions against Plaintiff, including: the unannounced home visit on January 10, 2025; placement on a Success Plan on January 10, 2025; omission of Plaintiff's adjuster license renewals in or around July 2025; escalation to a Formal PIP on August 20, 2025; suspension without pay on September 24, 2025; the issuance of a cease-and-desist directive on September 26, 2025; and termination on October 10, 2025.

68. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

69. Plaintiff notified Defendant and its agents of the unwelcome conduct; however, Defendant failed to remedy the same.

70. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

71. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

72. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

73. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

74. 42 U.S.C. § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

75. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

76. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

77. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included disparate terms and conditions of employment, disparate performance standards, racially differential claim-handling instructions, and her termination, which broke the contract between the parties.

78. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

79. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

80. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of

12

career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss of professional reputation.

81. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## HARASSMENT AND DISCRIMINATION ON THE BASIS OF RACE AND COLOR IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ. ("ELCRA")

82. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

83. At all material times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of the ELCRA.

84. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

85. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee because of their race or color.

86. Plaintiff is an African American woman and, as a result, is a member of a protected class pursuant to the ELCRA.

87. Plaintiff was subjected to offensive conduct on the basis of her membership in this protected class, as described in the Statement of Facts.

88. The conduct was unwelcomed.

89. This unwelcomed conduct was intended to, or in fact did, substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the Statement of Facts.

13

90. Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct and Defendant failed to remedy it.

91. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

92. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

93. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT VI**
**HARASSMENT AND DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ. ("ELCRA")**

94. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

95. At all material times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of the ELCRA.

96. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

97. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee because of their sex.

98. Plaintiff is a woman and, as a result, is a member of a protected class pursuant to the ELCRA.

99. Plaintiff was subjected to offensive conduct on the basis of her membership in this

14

protected class, as described in the Statement of Facts.

100. The conduct was unwelcomed.

101. This unwelcomed conduct was intended to, or in fact did, substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the Statement of Facts.

102. Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct and Defendant failed to remedy it.

103. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

104. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

105. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
## RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ. ("ELCRA")

106. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

107. At all material times, Plaintiff was an employee and Defendant was her employer covered by, and within the meaning of, the ELCRA.

108. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

15

109. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

110. Plaintiff engaged in protected activity, as more fully laid out in the Statement of Facts, including reporting race and sex discrimination and unequal treatment to multiple levels of Defendant's management and Human Resources.

111. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issues directly to multiple agents of Defendant.

112. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the Statement of Facts, including placing Plaintiff on a performance plan, omitting her license renewals, escalating her discipline to a Formal PIP, suspending her without pay, and ultimately terminating her employment.

113. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

114. Plaintiff notified Defendant and its agents of the unwelcomed conduct; however, Defendant failed to remedy the same.

115. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

116. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

117. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 ET SEQ. ("ELCRA")

118. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

119. At all material times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of the ELCRA.

120. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

121. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

122. Plaintiff's work environment, as alleged in the Statement of Facts, was made extremely hostile on the basis of race, color, and sex due to the discrimination and retaliation she suffered.

123. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's disregard of Plaintiff's complaints, made the situation untenable.

124. Additionally, Defendant treated Plaintiff, an African American female, in a hostile, intimidating, and offensive way, including by subjecting her to racially differential performance standards, racially differential claim-handling instructions, an unannounced home visit, escalating disciplinary actions, suspension without pay, and ultimate termination.

125. The unwelcomed conduct was intended to, or in fact did, substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work

17

environment, as alleged in the Statement of Facts.

126.     As a direct and proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

127.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

128.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IX
## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

129.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

130.     It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge. They are:

     a. explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty;

     b. where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment; and

     c. where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

131.     Plaintiff's termination came as a result of her raising concerns regarding the continuous race and sex discrimination, racially differential claim-handling instructions, unequal terms and conditions of employment, escalating hostile treatment, and her reporting of the same to multiple levels of Defendant's management and Human Resources.

132.    As a result of Defendant's actions and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

133.    Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, VERNELL WILSON, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;
2. Exemplary and/or punitive damages in whatever amount to which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  June 3, 2026                        Respectfully Submitted,


/s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
thameka@aikenslawfirm.com